UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DOMINIC SCOTT,

    Plaintiff,

v.                                                                                                              Case No. 2:08-cv-271
                                                                                                              HON. GORDON J. QUIST
F. SEBALY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff prisoner Dominic Scott filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against defendant Alger Maximum Correctional Facility Resident Unit Officer Eugene Sebaly. Plaintiff's complaint alleges that he is an African American prisoner who was confined in the C-Wing Birch Unit under the control of defendant. Plaintiff states that he was dependent upon defendant to serve plaintiff meals. Plaintiff alleges that defendant used racial slurs and direct orders to place plaintiff's hands on the wall and his knees on the bunk. Plaintiff states that he always complied with defendant's orders, but defendant still deprived plaintiff meals. Plaintiff asserts that white and Hispanic prisoners always received their meals and sometime they received extra food. Plaintiff alleges that he was denied food during the months of January and February 2008. Presently before the Court is defendant's motions to dismiss for failure to exhaust grievance remedies and for summary judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff's complaint does not specifically indicate the exact dates and number of times he allegedly was denied a meal by defendant Sebaly. Defendant Sebaly states that plaintiff's complaint should be limited to the four grievances that plaintiff exhausted regarding four separate meal denials. Plaintiff suggests that he is asserting a claim for a continual denial of meals during January and February 2008. Plaintiff concedes that if he had filed only two grievances asserting two

claims of a meal deprivation, then he could not assert a claim of a continuing violation of his rights. However, plaintiff argues that since he filed four grievances asserting that he was denied four meals he has satisfied the requirement to exhaust his claim of a continuing violation of his rights.

A prisoner must specifically mention the involved parties in the grievance to alert the prison officials of the problems so that the prison has a chance to address the claims before they reach federal court. *Bell v. Konteh*, 450 F.3d 651, 653 (6th Cir. 2006); *Burton v. Jones*, 321 F.3d 569, 574-75 (6th Cir. 2003); *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001); *Vandiver v. Martin*, No. 02-1338, 2002 WL 31166925, at *2 (6th Cir. Sept. 27, 2002) ("The issues [plaintiff] may raise, and the defendants he may name, in his lawsuit are limited to the specific issues raised, and the specific individuals mentioned, in his grievance."). Plaintiff has asserted four instances where he was allegedly denied meals. In the opinion of the undersigned, plaintiff's complaint is limited to only those four instances that were properly exhausted. It is noted that although, plaintiff has asserted a continuing violation of his rights, plaintiff has only specifically alleged four instances when he did not receive a meal.

Plaintiff alleges that his equal protection rights were violated when he was denied a meal on four different days by defendant. On January 13, 15, 16 and February 2, 2008, plaintiff alleges that defendant denied him meals solely because plaintiff is African American. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312 (1976). As

described in the foregoing, plaintiff has failed to present a claim that any of his fundamental rights have been abridged.

A claim that plaintiff was treated one way and everyone else was treated another way, by itself, is not sufficient to state an equal protection claim. *Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992), *cert. denied*, 510 U.S. 842 (1993). Rather, plaintiff must show that he was victimized by some suspect classification. *Id*. Absent some allegation or proof that the law was applied differently to plaintiff because of race, gender, age, or some other improper classification, no equal protection claim has been stated. *See Wagner v. Higgins*, 754 F.2d 186, 194 (6th Cir. 1985) (Conte, J., concurring); *see also Galbraith v. Northern Telecom, Inc.*, 944 F.2d 275, 282 (6th Cir. 1991), *cert. denied*, 503 U.S. 945 (1992) (a person's conduct is legitimate for purpose of the equal protection clause even though it may have been mean-spirited, ill-considered, or other unjustifiable, objectionable, or unreasonable, so long as it was not motivated by class-based discrimination).

Plaintiff has alleged that he is a member of a suspect class. However, to establish equal protection claim, inmate must prove that a racially discriminatory intent or purpose was a factor in the decision of the prison officials. *Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995) To establish a violation of the Equal Protection Clause, an inmate must show that the defendant purposefully discriminated against him. Village of Arlington Heights v. Metropolitan Hous. Dev. Corp., 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the defendant. *Id*. at 265-66. Defendant states that on the four occasions where plaintiff did not receive a meal, plaintiff refused his meal or was so disruptive that it was not safe to provide plaintiff a meal. On January 13, 2008, plaintiff was moved from his shower back to his cell. Plaintiff used profanity and made physical threats to defendant and other officers. As a result, plaintiff was given a major misconduct for threatening behavior and was found guilty. Plaintiff

refused to allow staff to remove his handcuffs after he was returned to his cell. Plaintiff was placed on fifteen minute rounds due to his behavior. Defendant was assigned to evaluate plaintiff every fifteen minutes. When food trays were served in plaintiff's unit, plaintiff was not given a meal because he was not at his door to receive the meal and would not surrender his restraints.

On January 15, 2008, defendant delivered a meal tray to plaintiff's cell. Plaintiff sat on his bed. When defendant asked if plaintiff was planning to take his tray, plaintiff responded, "I'll just file paperwork on you." Defendant denies making any racial comment to plaintiff. On January 16, 2008, defendant instructed plaintiff to place his hands on the rear cell wall and knees on the bed surface before defendant would open the upper food slot to give plaintiff his evening meal. Defendant made this request because plaintiff had a history of taking control of his food slot and attempting to assault staff through the slot. Plaintiff simply responded: "get away from me you fat fuck." Plaintiff continued being disruptive that day by flooding his cell. On February 2, 2008, plaintiff was being disruptive. Defendant asked plaintiff to go to the back of his cell. Plaintiff refused to comply. Defendant determined that plaintiff was disruptive and unmanageable and considered plaintiff's failure to follow orders as a refusal to accept his meal. Defendant denied making any racial remarks to plaintiff.

Plaintiff claims that he complied with every order ever requested by defendant, but defendant still refused to provide these meals because of plaintiff's race. Plaintiff has completely failed to show that he failed to receive these four meals due to his race. The documented evidence supports a conclusion that plaintiff was disruptive and unmanageable on the four occasions that he did not receive a meal. In the opinion of the undersigned, plaintiff has failed to rebut defendant's motion and has failed to establish that there exists any genuine issue of fact. Plaintiff suggests that he needs further discovery to support his claims. However, the proposed records he wishes to

discover could not support his version of what he believes occurred on the four days that he did not receive one of his meals.

Defendant alternatively moves for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. As previously discussed, because plaintiff cannot establish that his constitutional rights were violated, defendants are entitled to qualified immunity.

In summary, in the opinion of the undersigned, plaintiff has failed to sustain his burden of proof in response to defendant's motions. Accordingly, it is recommended that defendant's motions for dismissal (Docket #22) and for summary judgment (Docket #35) be granted

and that this case be dismissed in its entirety. It is further recommended that plaintiff's motion to compel discovery (Docket #20) be denied.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

        /s/ Timothy P. Greeley
        TIMOTHY P. GREELEY
        UNITED STATES MAGISTRATE JUDGE

Dated: February 10, 2010